# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

SEAN ROBERT ADDISON,       *
                                   *
       Plaintiff,             *
                                     *
v.                                     * CIVIL ACTION NO.:CV213-71
                                     *
JOSEPH ARNETT, JEREMY BOWEN,     *
STEPHEN PICKETT, WAYNE MOSELEY,    *
and MARK WOLFORT,             *
                                     *
       Defendants.          *

## ORDER

Presently before the Court is Defendants' Motion for
Summary Judgment. Dkt. No. 55.[1] Plaintiff has filed a Response
in Opposition to this Motion, and Defendants have filed a Reply.
Dkts. No. 62 & 65. After careful consideration of these
pleadings, and for the reasons that follow, Defendants' Motion
is **GRANTED** in part and **DENIED** in part. The Court grants summary
judgment to Defendants on Plaintiff's claims that Defendants
were deliberately indifferent to his safety by placing him in
the same recreation cage as another inmate. However,

---

[1] Through this Motion, Defendants first moved to dismiss Plaintiff's Complaint
by operation of the litigation bar of the Federal Tort Claims Act. By Order
dated March 18, 2015, the Court denied that portion of Defendants' Motion and
explained that it would address Defendants' arguments for summary judgment.
Dkt. No. 76.

Plaintiff's claims that Defendants violated his Eighth Amendment rights by failing to intervene in the ensuing assault by that inmate survive summary judgment.

## FACTUAL BACKGROUND

Plaintiff is currently housed at the Federal Correctional Institution in Sheridan, Oregon. From February 2008 until June 2010, he was housed at the Federal Correctional Institution in Jesup, Georgia, ("FCI Jesup"). Dkt. No. 49-1, p. 1. He brings this action against correctional officers at FCI Jesup alleging that they were deliberately indifferent to his safety before and during an incident where Plaintiff was beaten by another inmate. This incident took place on May 27, 2010, while Plaintiff was housed in FCI Jesup's Special Housing Unit ("SHU").

The SHU is a unit for inmates with disciplinary problems or a disruptive history who require greater management. Inmates in the SHU were allowed recreation time once a day for one hour. Dkt. No. 50, p. 4. Plaintiff alleges the SHU staff compiled a list of the inmates who wanted to have recreation on any particular day. The officers in the SHU review the profiles of the inmates desiring recreation time to keep inmates separated from each other, if necessary. Id. at p. 5. According to Plaintiff, as a matter of BOP policy and practice, inmates of different races are not placed in the same recreation cages. Id. at p. 8.

Plaintiff, who is black, wanted to have recreation on May 27, 2010. Id. Plaintiff asserts that another inmate, Gutierrez, who is Mexican, was considered to be a "separatee" or "separate" regarding black inmates in general and Plaintiff in particular and posed a substantial danger to Plaintiff and other black inmates and was scheduled for recreation time on this same date. Id. at pp. 5-6. Plaintiff alleges that Defendant Bowen knew of Gutierrez's racism and violence against black inmates, as this was documented in Bureau of Prisons' ("BOP") records, and knew that Gutierrez is a member of the Sureno gang, a group which does not like blacks. Id. at p. 7. Plaintiff contends Defendant Bowen assigned him to the same recreation cage as Gutierrez on May 27, 2010. Plaintiff also contends that Defendant Pickett escorted him while he was handcuffed to a recreation cage where several Mexican inmates, including Gutierrez, were also handcuffed. Id. at p. 8. Plaintiff further avers that Defendant Pickett knew of Gutierrez's history of violent behavior against black inmates and that Gutierrez was a member of the Sureno gang. Id. at p. 9.

According to Plaintiff, inmates in other recreation cages expressed their concerns about Plaintiff being placed in the same cage as Gutierrez and the other inmates, but Defendant Pickett ignored these concerns. Id. Plaintiff avers he also informed Defendant Pickett that he did not want to be put in

that particular recreation cage, yet Defendant Pickett placed him in that cage. Plaintiff states Defendant Pickett told him he was assigned to that cage, and he would go into this cage if he wanted recreation time. Plaintiff maintains he would have been deprived of recreational time that day had he insisted on being placed in a different cage. Id. at p. 10.

Plaintiff contends Gutierrez was the first inmate in that recreation cage to have his handcuffs removed, and he began beating Plaintiff within seconds of Plaintiff entering the cage. Id. at p. 12. Plaintiff claims he yelled for Defendant Pickett to remove his handcuffs, but Pickett did not do so and backed away from the cage. Plaintiff contends that Defendants Arnett, Bowen, Moseley, and Wolford were at or near the cage when he began getting attacked, but these Defendants did nothing to help Plaintiff in this situation. Id. at pp. 12-13. Plaintiff also contends Defendants watched Gutierrez assault Plaintiff and only entered the cage after Gutierrez tired himself out and stopped beating Plaintiff on Gutierrez's own volition. Id. at p. 14. Plaintiff asserts he lost consciousness and suffered "significant injuries" and continues to suffer physical and mental injuries as a result of the assault. Id. at p. 15.

AO 72A
(Rev. 8/82)

## DISCUSSION

Defendants move for summary judgment on several grounds.[2] First, Defendants maintain Plaintiff fails to state an Eighth Amendment claim against Defendants Pickett or Bowen. Defendants also assert Plaintiff fails to state a failure to intervene claim against them. Lastly, Defendants claim they are entitled to qualified immunity.[3]

### SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986),

---

[2] Defendants style their Motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment." Both sides have been given an opportunity to submit matters outside of the pleadings. In fact, both sides have submitted declarations in support of their respective positions. Therefore, it is appropriate to treat Defendants' Motion as a summary judgment motion.

[3] As noted above, Defendants Motion also included arguments regarding the FTCA bar, and those arguments have already been addressed by the Court's March 18, 2015 Order.

AO 72A
(Rev. 8/82)

and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving parties bear the burden of establishing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant[s are] entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

The instant Motion requires the Court to apply the above-explained summary judgement standard to each claim within

AO 72A
(Rev. 8/82)

Plaintiff's Second Amended Complaint.[4]  Accordingly, the Court proceeds to address whether summary judgment should be granted as to each of the Plaintiff's claims.[5]

## I.   Deliberate Indifference to Safety

Defendants assert Plaintiff cannot sustain a cause of action against Defendants Bowen and Pickett for being deliberately indifferent to Plaintiff's safety by placing him in the same cage as Gutierrez.  Defendants aver Plaintiff makes only conclusory allegations that Defendant Pickett knew of Gutierrez's prior fight, was aware of Gutierrez's history of violence against black people, knew Gutierrez was a member of the Sureno gang, and knew that the Sureno gang is racist against black people.  Dkt. No. 55, p. 12.  Defendants also characterize Plaintiff's allegations that officers do not place inmates of different races in the recreation cages together and that

---

[4]   "'As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading.'"  Schreane v. Middlebrooks, 522 F. App'x 845, 847 (11th Cir. 2013)(quoting Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982)).  "Once the district court accepts the amended pleading, 'the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'"  Id. (quoting Pintando v. Miami-Dade Hous. Agency, 501 F.3d 1241, 1243 (11th Cir. 2007) (quotation omitted)).  Plaintiff filed an original Complaint and two amendments thereto.  In his amendments, Plaintiff does not refer to or adopt his earlier pleadings.  Accordingly, the assertions contained in Plaintiff's Second Amended Complaint, dkt. no. 50, frame the issues before the Court.

[5] For ease of reference, the Court refers to Plaintiff's claims against Bowen and Pickett for placing him in the same cage as Gutierrez as Plaintiff's "deliberate indifference to safety claims" and his claims that Defendants failed to come to his aid during the assault as his "failure to intervene claims."

Pickett heard and ignored other inmates' concern of placing Plaintiff in the cage with Gutierrez as conclusory. Defendants argue that, even if Plaintiff and other inmates expressed concerns to Defendant Pickett about putting Plaintiff in the same cage as Gutierrez, there is no assertion that any of the inmates informed Defendant Pickett why Plaintiff should not have been placed in that cage. Id. In short, Defendants maintain there is no evidence of Defendant Pickett's subjective knowledge of a threat to Plaintiff's safety and his disregard to that threat.[6] Id. at p. 15. Defendants also point out that Defendant Bowen checked records before assigning Plaintiff and Gutierrez to the same cage. They note that there was nothing in those records indicating Gutierrez posed a particularized threat to Plaintiff or any other inmate or that Plaintiff should not be placed in the same recreation cage with any Mexican inmates. Id. at p. 17.

Plaintiff's deliberate indifference claims and Defendants' arguments require analysis of the Eighth Amendment's proscription against cruel and unusual punishment. That proscription imposes a constitutional duty upon prison officials

---

[6] Defendants argue that, based on the allegations contained in his Complaint, Plaintiff could have avoided being in the cage with Gutierrez if he simply declined or refused to go into the cage given his belief he was in danger of being harmed. Dkt. No. 55, p. 15. However, particularly at the summary judgment stage, the Court's focus is on Defendants' actions and subjective knowledge, not whether Plaintiff could have avoided the alleged assault at the hands of another inmate.

AO 72A
(Rev. 8/82)

to take reasonable measures to guarantee the safety of prison inmates. <u>Caldwell v. Warden, FCI Talladega</u>, 748 F.3d 1090, 1099–1100 (11th Cir. 2014) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)).

"'To show a violation of [his] Eighth Amendment rights, [a p]laintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" <u>Smith v. Reg'l Dir. of Fla. Dep't of Corr.</u>, 368 F. App'x 9, 14 (11th Cir. 2010) (quoting <u>Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.</u>, 400 F.3d 1313, 1319 (11th Cir. 2005)). "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" <u>Id.</u> (quoting <u>Purcell</u>, 400 F.3d at 1319–20). Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts. However, "simple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights." <u>Smith</u>, 368 F. App'x at 14. In other words, "to find deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge

of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010).

"In particular, under the Eighth Amendment, 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" Losey v. Thompson, No. 14-13748, 2015 WL 25061, at *4 (11th Cir. Jan. 2, 2015) (quoting Farmer, 511 U.S. at 833). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Id. (internal citation omitted). Rather, a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).

Like any deliberate indifference claim, a plaintiff must satisfy both an objective and a subjective inquiry. Chandler v. Crosby, 379 F.3d 1278, 1289-90 (11th Cir. 2004). Under the objective component, a plaintiff must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8 (1992). As for the subjective component, "the prisoner must prove that the prison official acted with 'deliberate indifference.'" Miller

AO 72A
(Rev. 8/82)

v. King, 384 F.3d 1248, 1260-61 (11th Cir. 2004) (quoting

Farmer, 511 U.S. at 837).  To prove deliberate indifference, the

prisoner must show that prison officials "'acted with a

sufficiently culpable state of mind'" with regard to the serious

prison condition at issue.  Id. (quoting Chandler, 379 F.3d at

1289-90).  Allegations of a jail official's generalized

awareness that someone is "'a problem inmate' with a well-

documented history of prison disobedience and [is] prone to

violence'" "is not enough to show [his] subjective awareness

that the inmate poses a substantial risk of serious harm" to

other inmates.  Gross v. White, 340 F. App'x 527, 531 (11th Cir.

2009) (first alteration in original) (quoting Carter v.

Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003)).

In the case at hand, Defendants dispute the knowledge

element of Plaintiff's deliberate indifference claim.  They

contend that they were not actually aware that Gutierrez posed a

risk to Plaintiff and that they did not fail to respond to that

risk in an objectively reasonable manner.  On that front,

Defendant Bowen declared that he checked the inmate records on

May 27, 2010, and neither the SENTRY (the BOP's computerized

record system) nor the SHU roster indicated Plaintiff and

Gutierrez should have been separated as individuals or as

members of any racial or ethnic group.  Dkt. No. 55-3, p. 3,

¶ 10.  Defendant Bowen stated, if the records had indicated a

AO 72A
(Rev. 8/82)

need for separation, Plaintiff and Gutierrez would not have been placed in the same recreation cage together. Id. at ¶ 11. Defendant Bowen also stated he was not aware of any reason Gutierrez posed a danger to Plaintiff's safety. Id. at ¶ 12.

Defendant Pickett declared that Defendant Bowen assigned Plaintiff and Gutierrez to the same recreation cage, which led him to believe that there was nothing in the BOP's records indicating Plaintiff and Gutierrez should be separated. Dkt. No. 55-2, p. 3, ¶¶ 10-11. Defendant Pickett also declared he was not aware of any reason Gutierrez posed any danger to Plaintiff's safety, but, if he had, he would not have placed them in the same recreation cage. Id. at ¶ 12. Defendant Pickett further declares it is common in the SHU to have a lot of noise and for inmates to talk loudly and shout, and he does not recall any inmate telling him that Plaintiff should not have been placed in the same cage as Gutierrez. Id. at ¶¶ 16-17.

Plaintiff declared that "[a]ll prison officials" knew Gutierrez is a member of the Sureno gang, which is "racist against blacks[ ]", and Gutierrez was placed in the SHU because he "violently assaulted a black inmate for racial reasons." Dkt. No. 49-1, p. 2, ¶¶ 9-10. Plaintiff stated Defendants Bowen and Pickett "knew" about Gutierrez's gang affiliation and violent, racist history against blacks when the recreation cage assignment was made on May 27, 2010, because Defendants Bowen

AO 72A
(Rev. 8/82)

and Pickett "knew" Gutierrez assaulted a black prisoner for "racial reasons," which caused the prison to be locked down for two days. Id. at pp. 2-3, 5 ¶¶ 12, 32. Plaintiff avers Defendant Pickett escorted him to the recreation cage area, and he noticed Defendant Pickett was not putting him in the cage in which he usually had recreational time. Id. at p. 3, ¶ 17. Plaintiff contends several Mexican inmates were in the cage to which Defendant Pickett took him, including Gutierrez. Id. at pp. 3-4, ¶¶ 18, 20. According to Plaintiff, he told Defendant Pickett "it was not a good idea to put [him] in the same cage as Gutierrez." Id. at p. 4, ¶ 21. Plaintiff stated Defendant Pickett ignored his "concerns" and did not give him the option of going to another cage. Id.

Plaintiff also submitted the affidavits of two (2) fellow inmates who were housed in the SHU on May 27, 2010, Terrance Tomlinson and Marco Velez. Mr. Tomlinson averred he heard Plaintiff mention to Defendants Pickett, Bowen, and Moseley that they could not place Gutierrez in that cage because he should be placed in another cage. Dkt. No. 49-1, p. 7, ¶ 3. Mr. Velez stated the officers assigned to the SHU "knew" about Gutierrez's violent and racist behavior. Dkt. No. 49-2, p. 2, ¶ 11. Mr. Velez declared that he "yelled out" to Plaintiff and the officer who escorted him and told the officer Plaintiff should be placed in another cage. Id. at p. 3, ¶ 18. Mr. Velez stated other

AO 72A
(Rev. 8/82)

inmates in other cages "voiced their concern that [Plaintiff] was in danger." Id. Finally, Mr. Velez stated he heard Plaintiff tell the officer he should be placed in another cage, and the officer told Plaintiff he could either go into that cage or be taken back to his cell without recreation. Id. at ¶ 20.

Viewing the evidence in the light most favorable to Plaintiff, he fails to establish a genuine dispute as to any fact material to his deliberate indifference to safety claim against Defendants Pickett and Bowen. The most the evidence shows is that Plaintiff told Defendant Pickett he did not want to be placed in the cage to which he was assigned on May 27, 2010. There is no evidence that Defendants Bowen or Pickett had subjective awareness that Gutierrez posed any threat to Plaintiff's safety.

In an attempt to establish a genuine dispute of material fact on this issue, Plaintiff points to Gutierrez's prior altercation with another inmate. The Inmate Discipline Data printout Defendants submitted indicates that Gutierrez[7] admitted to assaulting another inmate without serious injury on January 9, 2010. Dkt. No. 55-3, p. 7. This incident occurred three and one-half months prior to the incident on May 27, 2010, and there is nothing before the Court indicating Gutierrez had

---

[7] The inmate's name on this printout has been redacted, but the parties have not disputed that this printout concerns Gutierrez. Dkt. No. 55-3, p. 7.

AO 72A
(Rev. 8/82)

any other assault incidents.  Additionally, to prove deliberate indifference, a plaintiff must show more than an officer's mere awareness of another inmate's documented history of disobedience, propensity to violence, or "generally problematic nature."  Carter, 352 F.3d at 1349.[8]

Plaintiff also attempts to meet his burden of establishing competent evidence of a deliberate indifference claim by asserting in conclusory fashion that Defendants Bowen and Pickett "knew" of Gutierrez's "violent and racial history" simply because they worked in the SHU.  However, "[i]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.  Each individual Defendant must be judged separately and on the basis of what that person knows." Harper v. Lawrence Cnty., Ala., 592 F.3d 1227, 1234 (11th Cir. 2010) (quoting Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008)).

Lastly, Plaintiff contends that he and other inmates told Defendant Pickett that Plaintiff should not be in the same recreation cage as Gutierrez.  However, there is no evidence Defendant Pickett knew *why* that was the case.  Without such knowledge, Defendant Pickett cannot be held to the level of

---

[8] Indeed, many prisoners, including Plaintiff, have some instances of violence in their criminal history.  Therefore, a holding that prison officials violate the Eighth Amendment any time that they put a prisoner in the vicinity of another prisoner with some history of violence would lead to absurd results.

AO 72A
(Rev. 8/82)

culpability required for a deliberate indifference claim.  See
Gooden v. Mormon, 524 F. App'x 593, 596 (11th Cir. 2013)
(affirming grant of summary judgment where there was no evidence
that plaintiff told officer about a specific threat from any of
the other inmates).

In short, Plaintiff fails to set forth any fact indicating
Defendants Bowen and Pickett had a subjective awareness of a
risk to Plaintiff's safety and ignored that risk.  While the
attack on Plaintiff is unfortunate, the Court cannot hold
Defendants to the standard of hindsight nor base its decision on
what the Defendants could have known.  Rather, the Court
focuses, as it must, on what the Defendants actually knew.
Because Plaintiff has failed to establish any evidence that
Defendants actually knew of a substantial risk to his safety and
ignored that risk, Defendants are entitled to summary judgment
on Plaintiff's deliberate indifference claim.

## II.  Failure to Intervene

In addition to claiming that Defendants Bowen and Pickett
acted with deliberate indifferent before the assault, Plaintiff
also alleges that all Defendants failed to intervene during the
assault.  As set forth below, unlike Plaintiff's deliberate
indifference claims, at this stage, genuine disputes of material
fact remain on Plaintiff's failure to intervene claims.

16

A prison official can be liable under the Eighth Amendment for failing to take reasonable steps to intervene on behalf of the victim of an ongoing assault by another inmate. See Ledlow v. Givens, 500 F. App'x 910, 914 (11th Cir. 2012) (citing Skritch v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002)); see also Murphy v. Turpin, 159 F. App'x 945, 948 (11th Cir. 2005) (applying deliberate indifference standard to claim that prison official failed to intervene in inmate-on-inmate assault). "Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence." Terry v. Bailey, 376 F. App'x 894, 896 (11th Cir. 2010) (citing Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998)). "However, in order for liability to attach, the officers must have been in a position to intervene." Id. (internal citation omitted).

Defendants claim they all acted in the same manner when delaying in intervening in the assault on Plaintiff, which "suggests that the actions of each were warranted by safety concerns." Dkt. No. 55, p. 18. To this end, Defendants assert Plaintiff fails to allege any facts which suggest that any Defendant subjectively believed that he, along with the other Defendants, could intervene more quickly than they did in a safe manner, consistent with concerns for their own safety and that of other inmates. Defendants maintain the duration of the

17

assault was brief, as Plaintiff contends it lasted only "several minutes." Id., quoting Compl., ¶ 71. Defendants assert this Court can consider the duration of the assault to determine whether a safe intervention could have occurred more quickly. Defendants argue that, though Plaintiff states they were "present or near" the cage at the time of the assault, he does not state whether Defendants saw or were aware of the assault. Id., quoting Compl., ¶¶ 60-61. Additionally, Defendants maintain that there were other inmates in the recreation cage and, even though they were handcuffed, they still could have posed a safety risk. In essence, Defendants contend that Plaintiff fails to allege that they acted in an objectively unreasonable manner. Defendants also contend they were alert to the situation and addressed it in accordance with their judgment and practice and common sense. Id. at pp. 19, 22.

As discussed above, Defendant Pickett escorted Plaintiff to the recreation cages on May 27, 2010. Defendant Pickett declared he removed Gutierrez's handcuffs first because he was the inmate who stepped to the slot used for removing handcuffs first. Dkt. No. 55-2, p. 4, ¶ 21. Defendant Pickett affirmed he could not remove Plaintiff's handcuffs because, once Gutierrez began assaulting Plaintiff, it caused Plaintiff to move away from the slot for handcuff removal. Defendant Pickett also affirmed he stepped back from the cage as a safety

AO 72A
(Rev. 8/82)

precaution and sounded his body alarm.  Id. at ¶¶ 18, 22.

Defendants Pickett and Bowen stated other officers arrived to

assist "within seconds[ ]" and "repeatedly ordered" Gutierrez to

stop assaulting Plaintiff.  Id. at ¶ 18; Dkt. No. 55-3, p. 4, ¶

15.  Defendants Pickett and Bowen averred there was a "brief

delay" before they and the other officers entered the recreation

cage because they did not believe there were enough officers to

make a safe entry into the cage.  Dkt. No. 55-2, p. 4, ¶ 19;

Dkt. No. 55-3, p. 4, ¶ 16.  Defendants Pickett and Bowen

declared they and other officers entered the recreation cage and

stopped the assault once there were, in their estimation, a

sufficient number of officers present.[9]  Id.; Dkt. No. 55-2, p.

4, ¶ 19.  Defendants Arnett and Moseley echoed these sentiments

and declared they did not enter the recreation cages when the

assault began until there were enough prison officials present

to enter safely based on their training and safety concerns.

Dkt. No. 34-1, p. 8, ¶¶ 5-6, p. 12, ¶¶ 5-6.

Defendant Wolfort averred that he was not present in the

recreation cage at the time the assault began but became aware

of an incident once he heard the body alarm sound.  Dkt. No. 34-

1, p. 10, ¶ 5.  Defendant Wolfort declared that he had the keys

to the unit and had to let responding staff into the area, but

---

[9]  Defendants Pickett and Bowen stated they disagree with Plaintiff's
estimation that there were at least five officers present at the cage at the
time the assault began. Dkt. No. 55-2, p. 4, ¶ 20; Dkt. No. 55-3, p. 4, ¶ 17.

he did not enter the recreation cage area for safety and security reasons, as the officer with the keys does not enter that area. Id. at pp. 10-11, ¶¶ 6-7.

Plaintiff and his witnesses paint a much different picture of Defendants' decision not to intervene. Plaintiff affirms that Defendant Pickett and "at least four other officers" were present at or near the recreation cage, including Defendants Bowen and Moseley, when the assault began. Dkt. No. 49-1, p. 4, ¶ 22. Plaintiff declared he yelled for Defendant Pickett to remove his handcuffs once Gutierrez began punching him, yet Defendant Pickett did not come to his aid. Id. at ¶¶ 25-26.

In addition, Mr. Tomlinson declared he saw Gutierrez assault Plaintiff while Plaintiff "pleaded and screamed for help." Dkt. No. 49-1, p. 7, ¶ 3. Mr. Tomlinson stated Gutierrez's assault of Plaintiff lasted 3 to 5 minutes while all of the Defendants stood outside of the recreation cage even though Plaintiff was unconscious and Gutierrez was sitting on top of Plaintiff, beating him repeatedly. Id. at ¶ 4. Mr. Tomlinson also stated another officer stepped in front of all of the Defendants, opened the cage door, and stopped Gutierrez's assault of Plaintiff. Id. at ¶ 5. Mr. Tomlinson declared he witnessed Defendant Wolfort "grin and laugh" as he left the recreation cage area. Id. at ¶ 6.

AO 72A
(Rev. 8/82)

Moreover, Mr. Velez declared he saw Plaintiff place his hands in the slot for an officer to remove his handcuffs after Gutierrez began assaulting him and heard Plaintiff yell at the officer to take off the handcuffs. Mr. Velez stated the officer ignored Plaintiff and backed away from the cage. Dkt. No. 49-2, pp. 3-4, ¶¶ 21-22. Mr. Velez declared there were at least four officers who "stood directly outside" of the recreation cage and watched Gutierrez "land blow after blow on" Plaintiff. Id. at ¶ 26. Mr. Velez opined these officers were in a position to safely intervene and stop Gutierrez's assault, yet the officers "chose to do nothing[ ]", including failing to give verbal orders to Gutierrez to stop assaulting Plaintiff. Id. at ¶¶ 27-28. Mr. Velez averred "[s]everal minutes passed" before the officers opened the recreation cage and handcuffed Gutierrez, but by this time, Gutierrez had "already tired himself out from his savage beating" of Plaintiff. Id. at pp. 4-5, ¶¶ 29-30.

Viewing the evidence before the Court in the light most favorable to Plaintiff, he has created a genuine dispute of material fact regarding whether Defendants failed to intervene in Gutierrez's assault of Plaintiff in a timely manner and whether Defendants were in a position to be able to intervene safely. The Court recognizes Defendants' citation to safety concerns to explain their admitted "brief delay" in entering the recreation area. However, Plaintiff has submitted evidence from

AO 72A
(Rev. 8/82)

which the trier of fact could find that Defendants were in a position to stop the assault before they did.  Specifically, there is evidence that the assault lasted up to five minutes, that another officer was able to step in front of Defendants and stop the assault on his own while Defendants did nothing, and that Defendants did not take any measures, including unlocking Plaintiff's handcuffs, while he pleaded for help.  Given the significant differences in the Defendants' and the Plaintiff's version of events, Defendants are not entitled to summary judgment in their favor on Plaintiff's failure to intervene claims.

### III. Qualified Immunity

Defendants argue that, even if Plaintiff has established a genuine dispute of material fact as to his failure to intervene claims, they are entitled to qualified immunity.[10]  Specifically, they maintain their actions were in accord with policy and legitimate penological concerns, and Plaintiff fails to allege any facts warranting a finding they acted in an objectively unreasonable manner.  Dkt. No. 55, p. 24.

Qualified immunity protects a government official performing discretionary functions from suit in his individual capacity, so long as his conduct does not violate "clearly

---

[10] Defendants also argued for qualified immunity as to Plaintiff's deliberate indifference claim. Because the Court has already determined that summary judgment is warranted as to that claim, it need not address those arguments.

established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1232 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). To warrant qualified immunity, a government official must first prove that he was acting within his discretionary authority. Id. at 1233; Ray v. Foltz, 370 F.3d 1079, 1081-82 (11th Cir. 2004). A government official acts within his discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority. Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006). Once the government official has shown he was acting within his discretionary authority, the burden shifts to the Plaintiff to show that the Defendant is not entitled to qualified immunity. The Supreme Court has established a two-part test to determine the applicability of qualified immunity: the court must determine whether plaintiff's allegations, if true, establish a constitutional violation, and whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).[11]

---

[11] In Pearson v. Callahan, 555 U.S. 223, 236 (2009), the Supreme Court held that courts can exercise discretion in deciding which of the two Saucier prongs should be addressed first in light of the particular case at hand.

AO 72A
(Rev. 8/82)

In this case, Plaintiff's testimony that Defendants had the opportunity to intervene in Gutierrez's assault of him and failed to do so, if true, establish a constitutional violation. It was clearly established in May 2010 that prison officials have a duty to intervene when witnessing an assault of an inmate and can be liable for their failure to do so. See Skritch, 280 F.3d at 1301; see also Terry, 376 F. App'x at 896. Accordingly, Defendants are not entitled to qualified immunity.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment, dkt. no. 55, is **GRANTED** in part and **DENIED** in part. Plaintiff's deliberate indifference to his safety claims against Defendants Pickett and Bowen are **DISMISSED**. Plaintiff's failure to intervene claims against all Defendants remain pending.

**SO ORDERED**, this 31 day of March , 2015.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

24

AO 72A
(Rev. 8/82)