IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

SEAN ROBERT ADDISON,

    Plaintiff,

v.

JOSEPH ARNETT; JEREMY BOWEN; STEPHEN PICKETT; and WAYNE MOSELEY,

    Defendants.

CIVIL ACTION NO.: 2:13-cv-71

## **O R D E R**

This matter comes before the Court on Plaintiff's Motion to Strike the Opinion and Testimony of Defendants' Expert Witness. (Doc. 124.) Plaintiff urges the Court to strike the expert opinion and testimony based upon his assertion that the testimony will not assist the trier of fact and is not based upon sufficiently reliable methodology. For the reasons stated below, Plaintiff's Motion is **GRANTED**.

## BACKGROUND

Plaintiff, an inmate currently housed at the Federal Correctional Institution in Sheridan, Oregon, brought this Complaint pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 402 U.S. 388 (1971), contesting certain conditions of his confinement while housed at the Federal Correctional Institute in Jesup, Georgia ("FCI Jesup"). (Doc. 1.) Plaintiff alleges that correctional officers at FCI Jesup violated his Eighth Amendment right against cruel and unusual punishment by failing to intervene when another inmate, Gutierriz, assaulted him in a recreation cage.

Defendant has retained Mark C. Foreman ("Mr. Foreman"), a former Correctional Services Administrator employed by the Federal Bureau of Prisons ("BOP"), to provide expert testimony supporting Defendants' claim that the correctional officers' response to Plaintiff's attack was objectively reasonable. (Doc. 103). Plaintiff moves the Court to exclude the testimony of Mr. Foreman under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), asserting that such testimony fails to meet Daubert's requirements for the admissibility of expert testimony. (Doc. 124.) Defendants seek denial of Plaintiff's Motion on the basis that the proffered testimony satisfies Daubert scrutiny. (Doc. 125.)

## DISCUSSION

In Daubert, the U.S. Supreme Court interpreted Federal Rule of Evidence 702 ("Rule 702"), which governs expert testimony, stating that Rule 702 "compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert *scientific* evidence." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing Daubert, 509 U.S. at 589 n.7, 597). The U.S. Supreme Court later held that "Daubert's general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (citing Fed. R. Evid. 702). Having adopted these decisions, amended Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Court of Appeals for the Eleventh Circuit has set forth a three-prong inquiry encompassing the requirements of Daubert and its progeny and Rule 702. Under the three-prong inquiry, a court determining the admissibility of expert testimony must consider whether

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Frazier, 387 F.3d at 1260 (citations omitted). The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence. Daubert, 509 U.S. at 592, n.10.

For the first prong, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." Id. at 1260–61; see also Fed. R. Evid. 702 (a witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]").

The reliability "criterion remains a discrete, independent, and important requirement for admissibility." Frazier, 387 F.3d at 1261. The Supreme Court in Daubert "set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." United States v. Brown, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted). These factors or observations inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." Id. (citation omitted). "Sometimes the specific Daubert factors will aid in determining reliability; sometimes other questions may be more useful. "Indeed, the Committee Note to the 2000 Amendments of

3

Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" Frazier, 387 F.3d at 1261.

Lastly, expert opinion testimony must assist the trier of fact. Id. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Id. (citation omitted).

**A****Whether Mr. Foreman's Testimony will Assist the Trier of Fact**

Plaintiff first contends Mr. Foreman's opinion is useless in assisting the trier of fact to understand the evidence or determine a fact in issue. (Doc. 124, p 5.) Plaintiff asserts that Foreman's recapitulation of BOP policy, followed by his conclusion that "the Defendants acted properly and exercised sound correctional judgment and discretion in responding to the inmate-on-inmate assault," (doc. 103, p. 3.), consists merely of a legal conclusion and, therefore, fails to satisfy the third prong under Frazier. (Doc. 124, p. 3.) In Response, Defendants cite case law in which correctional officers' failures to intervene during inmate-on-inmate assaults were found to be reasonable. (Doc. 125, p. 5.) Additionally, Defendants argue that the information presented by Foreman is highly relevant. (Id. at p. 7.)

Expert testimony is admissible only if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony is helpful if it "concerns matters that are beyond the understanding of the average lay person," but expert testimony generally is not helpful "when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262–63 (citations omitted). Thus, while "[a]n expert may

testify as to his opinion on an ultimate issue of fact[,] . . . [a]n expert may not . . . merely tell the jury what result to reach." Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990) (alterations added) (citations omitted).  Similarly, an expert "may not testify to the legal implications of conduct; the court must be the jury's only source of law." Id. (citations omitted).

Here, the only remaining claim in Plaintiff's Bivens suit is an Eighth Amendment claim based upon Defendants' failure to intervene. "Prison correctional officers may be held directly liable under [Bivens] if they fail or refuse to intervene when a constitutional violation occurs in their presence." Terry v. Bailey, 376 F. App'x 894, 896 (11th Cir. 2010) (citing Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998)). An officer who fails to intervene in a fight between inmates can only be held liable if he "was physically able and had a realistic chance to intervene and act in time to protect the inmate plaintiff." Fanning v. Voyles, No. 2:13–CV–02011–WMA, 2014 WL 6629422, at *5 (N.D. Ala. Nov. 21, 2014); Glispy v. Raymond, No. 06–14269–CIV, 2009 WL 2762636, at *3 (S.D. Fla. Aug. 28, 2009) (citing Ensley, 142 F.3d at 1407–08)).

Mr. Foreman's conclusion that "the Defendants acted properly and exercised sound correctional judgment and discretion in responding to the inmate-on-inmate assault" is unhelpful because it addresses the legal sufficiency of Defendants' actions, as opposed to assisting the jury in determining whether Defendants were physically able and had a realistic chance to intervene. Further, Foreman's citation of BOP Policy leading him to this conclusion is unhelpful because "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63. Presumably, Defendants will explain the BOP policies they claim they followed during Plaintiff's attack and the actions they took in conformity with those policies. As discussed

5

below, these policies direct correctional officers to use their "personal judgment" when deciding whether to intervene during an inmate-on-inmate assault and to consider factors such as "the risk of personal injury," "the physical attributes of the inmate," and whether "time allows for the retrieval of personal protective gear." (Doc. 103, p. 3.) Comprehension of these policies is within the purview of laymen jurors. Therefore, expert testimony on this subject is neither needful nor helpful.

**B.     Whether Foreman's Methodology is Reliable**

The parties also dispute whether Mr. Foreman's opinion meets the reliability requirement of Fed. R. Evid. 702. Plaintiff contends that the methodology by which Mr. Foreman reached his conclusions—analysis of BOP policy for responding to inmate fights—is unreliable because those policies invite subjective analysis. (Doc. 124, p. 6; Doc. 128, p. 2.) Plaintiff argues that the subjective, imprecise nature of the BOP policies that guided Mr. Foreman's opinion render it a personal, as opposed to scientific or technical opinion. (Doc. 128, p. 2.) Defendants respond that the policies Mr. Foreman relied upon to reach his conclusion "provide a clear explanation of the factors relevant to use of force situations." (Doc. 125, p. 10.) Defendants do not contest that the policies are vague or subjective, but rather urge the Court to reject Plaintiff's argument because "it is impossible for the BOP to give specific guidance" to determine whether officers should intervene during an inmate-on-inmate assault. (Id. at p. 11.)

Daubert provides a list of "general observations" for courts to consider in determining the reliability of an expert's theory or technique: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." United States v. Brown, 415 F.3d 1257, 1267 (11th Cir. 2005) (citing

Daubert, 509 U.S. at 593–94). However, for nonscientific expert testimony, "the trial judge must have considerable leeway in deciding . . . whether particular expert testimony is reliable[ ]" and "may decide that nonscientific expert testimony is reliable based upon [the purported expert's] personal knowledge or experience." McDaniel v. Smith, No. CV507–079, 2009 WL 3126325, at *1 (S.D. Ga. May 2, 2009) (citing Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331, 1338 (11th Cir. 2009)) Accordingly, "[t]he assessment of a proposed expert's reliability must be "flexible" and case-specific, for "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." Cornerstone Missionary Baptist Church v. S. Mut. Church Ins. Co., No. 5:12–CV–149, 2013 WL 6712928, at *4 (M.D. Ga. Dec. 18, 2013) (citing Kumho, 526 U.S. at 141–42.) Certainly "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." Kumho, 526 U.S. at 156. However, a witness who has principally relied on experience to form his opinion "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261. The Court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." Kumho, 526 U.S.at 1179 (citing General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997)).

First, nowhere in his opinion does Mr. Foreman explain *how* his experience as a correctional officer and correctional services administrator or his experience confronting similar situations during his time serving in those capacities informed his opinion. He merely states his qualifications, cites BOP policy, and concludes that Defendants' actions were proper. (Doc. 103.) Mr. Foreman's opinion fails to meet the standards of FRE 702 on this basis alone. ("An

expert's unexplained assurance that [his] opinions rest on accepted principles" is not enough. Furmanite Am., Inc. v. T.D. Williamson, Inc., 506 F. Supp. 2d 1126, 1130 (M.D. Fla. 2007) (citing McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1242 (11th Cir.2005))).

The Court also finds persuasive Plaintiff's assertions that Mr. Foreman's methodology results in a personal opinion as opposed to a scientific or technical one. As Defendants readily admit, "it is impossible for the BOP to give specific guidance as to every possible situation a BOP officer might face requiring the immediate use of force." (Doc. 125, p. 11.) Consequently, the BOP policies on which Mr. Foreman bases his conclusion are also imprecise and invite a subjective inquiry into the pertinence of the challenged action. For example, Mr. Foreman states that "[w]hen circumstances permit, a planned or calculated use of force is desirable in all situations where force is required," but he does not explain whether the circumstances of *this* case permitted the officers to plan their use of force or required them to act immediately. (Doc. 103, p. 1.) Similarly, in describing the policies that informed his opinion that Defendants responded properly, Mr. Foreman lists an array of factors correctional officers should consider before using force. (Id. at p. 2.) However, he fails to explain how these factors informed Defendants' decision not to intervene. The lack of analysis in Mr. Foreman's report leads the Court to surmise that his conclusion that Defendants "acted properly and exercised sound correctional judgment" is merely a personal opinion.

Moreover, Mr. Foreman's states that "Bureau of Prisons policy does not stipulate a staff-to-inmate ratio for immediate use of force situations." This statement implicitly concedes that the cited BOP polices provide no way for Mr. Foreman to objectively evaluate whether the four correctional officers who stood by as Gutierrez assaulted Plaintiff should have intervened or should have waited for a fifth officer to arrive. Finally, Mr. Foreman's statement that BOP

policy requires officers to "utilize sound correctional judgment" before intervening during an inmate-on-inmate assault, followed by his conclusion that Defendants "exercised sound correctional judgment" is circular, unhelpful to the jury, and inherently subjective.

Accordingly, the Court agrees that the methodology employed by Mr. Foreman in reaching his conclusion is not sufficiently reliable. The BOP policies cited by Mr. Foreman simply require the officer whose behavior is in question to use "sound judgment" and to consider various factors when deciding whether to intervene during an inmate-on-inmate assault. As a result, those policies establish no standard by which an expert can objectively evaluate an officer's actions. Whether Defendants' behavior comported with BOP policy and whether the BOP policies constitute reliable methodology in rendering an expert opinion are two separate inquiries. As the BOP policies that guided Mr. Foreman's opinion require a subjective inquiry into the propriety of Defendants' actions, they cannot produce an objective expert opinion reached by sufficiently reliable methodology.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion to Strike the Opinion and Testimony of Defendants' Expert Witness is **GRANTED**.

**SO ORDERED**, this 12th day of April, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA